*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LESTER CARROLL,

        Petitioner-Appellee,

v

CITY OF TAYLOR,

        Respondent-Appellant.

UNPUBLISHED
July 21, 2026
2:40 PM

No. 375829
Wayne Circuit Court
LC No. 24-018069-AA

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

In this zoning dispute, respondent, City of Taylor, appeals as of right the Wayne Circuit Court's order reversing the decision of the City of Taylor Zoning Board of Appeals (ZBA) denying petitioner, Lester Carroll, a use variance to keep animals on his property in excess of the limits set by the City's zoning ordinance. For the reasons stated in this opinion, we affirm, in part, reverse, in part, and remand.

## I. BACKGROUND

Petitioner owns property located at 26040 Northline Drive in Taylor, Michigan. In January 2024, respondent issued petitioner a civil infraction for violation of City of Taylor Code of Ordinances, § 14.09. The ordinance provides in relevant part:

> (a) Domestic animals, dogs, cats, birds and non-breeding rabbits, respectively, are limited to a total of three (3) adult animals per household.

> (b) Unless otherwise provided in this ordinance, no building or land in any district shall keep, raise, procreate or otherwise allow on the premises any wild or exotic animal, fowl, farm animal or livestock. [City of Taylor Code of Ordinances, § 14.09].

In October 2024, petitioner petitioned the ZBA for a use variance to be allowed to keep his animals on his property, which included 11 chickens, a dog, two cats, a blue and gold macaw, and an African grey parrot. A letter from petitioner's attorney explained that he had been diagnosed

with Huntington's disease, a terminal inherited neurological condition that affects his brain function, and that petitioner was seeking reasonable accommodation under the Fair Housing Act. Specifically, petitioner requested a variance that would allow him to have "emotional support animals in residential district/I1 per attachments, as [an] exception to Section 14.09." Petitioner's property was zoned I-1, Light Industrial, with a current non-conforming residential use. With his petition, petitioner provided a drawing of his property indicating the size and location of the chicken coop. The drawing indicated a 13-foot by 13-foot coop, a 12-foot "connector run to coop," and a 10-foot by 12-foot "outdoor run" located behind petitioner's home.

Also included with the petition were letters from petitioner's medical providers. The first letter dated May 10, 2024, was from Dr. Bisena Bulica, DO, a movement disorder neurologist and the director of the Huntington Disease Society of America Center of Excellence at Henry Ford Health. Dr. Bulica provided information about Huntington's disease and the symptoms petitioner experienced, including behavioral and emotional symptoms, such as depression, anxiety, and emotional outbursts; cognitive changes, such as difficulty concentrating or focusing; and impairment of motor skills, such as involuntary muscle movements and difficulties with speech and swallowing. The second letter dated June 5, 2024, was provided by Dr. Theresa Toledo, MD, lead psychiatrist for the Huntington Disease Society of America Center of Excellence at Henry Ford Health. Dr. Toledo prescribed emotional support animals to petitioner to help him cope with limitations of his Huntington's disease and the anxiety stemming from his diagnosis.

In a third letter dated October 21, 2024, Dr. Toledo elaborated on the benefits petitioner derived from his animals. Petitioner had expressed that his chickens and other animals "foster a calm, peaceful, and relaxing environment for him daily" and give him a sense of "purpose" and connection. Dr. Toledo opined that the support petitioner described receiving from his chickens "confirm[ed] that he benefits mentally, emotionally and physically from having access to them regularly." She explained that petitioner had "shared in great detail how the flock works as a unit and how each chicken brings their own personality to the group." Further, "[e]ach chicken allows for the flock to function well and their togetherness is necessary for the flock to remain functional." Dr. Toledo opined that "removing any chickens from the flock or [petitioner's] home [would] have a negative impact on [petitioner's] mental health," negatively impacting his mood and physical symptoms and his ability to function on a daily basis. Accordingly, Dr. Toledo requested that all of petitioner's chickens be allowed to live on his property for petitioner's emotional, mental, and physical well-being.

The ZBA held a public hearing at which it considered petitioner's request for a variance. The ZBA denied petitioner's request. The ZBA determined that petitioner's request was vague. Further, the ZBA found that the letters provided in support of the variance by petitioner's medical providers were insufficient. Specifically, the ZBA noted that the first letter was not signed by Dr. Bulica and the second letter did not include Dr. Toledo's medical license number. In addition, the ZBA found that it lacked information about the health of the chickens and "how [the] animals are maintained as not to create health issues or rodent issues."

Petitioner appealed the ZBA's decision to the circuit court. At oral argument, petitioner argued that the ZBA "basically played the ostrich or ignored the overwhelming medical evidence that it had in front of it." Petitioner argued that his request for reasonable accommodation was supported by competent, material, and substantial evidence. Further, petitioner argued the ZBA's

focus on the lack of a signature or medical license number on the letters was arbitrary and capricious. Respondent argued that petitioner had not met his burden of demonstrating the need to keep animals on his property beyond what was allowed under the zoning ordinance.

The circuit court reversed the ZBA's decision explaining that the decision was "arbitrary, capricious, and unreasonable and without a rational basis on this record." The circuit court denied respondent's request to remand the matter to the ZBA, stating that it would not remand the matter "[s]o that the Zoning Board can disrespect and fail to consider what was obvious as they disrespected and failed to consider the obvious in [petitioner's] prior request." This appeal followed.

## II. STANDARD OF REVIEW

"Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located." MCL 125.3605; MCL 125.3606(1). "When reviewing a decision of a zoning board of appeals, a circuit court's review is limited to whether the decision is authorized by law and supported by competent, material, and substantial evidence on the whole record." *Pegasus Wind LLC v Tuscola Co*, 513 Mich 35, 44; 15 NW3d 108 (2024) (quotation marks and citation omitted). " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340-341; 810 NW2d 621 (2011) (quotation marks and citation omitted). "The factual findings of a zoning board of appeals are entitled to deference." *Pegasus Wind*, 513 Mich at 45 (quotation marks and citation omitted). "A court will not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *Id*. (quotation marks and citation omitted).

On appeal, we "assess whether the circuit court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the zoning board of appeals' factual findings." *Id*. (quotation marks, citations, and brackets omitted). The circuit court's decision "is subject to review under a standard identical with the clearly erroneous standard." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

## A. SUBSTANTIAL-EVIDENCE

On appeal, respondent argues that the circuit court did not apply the correct standard of review and erred by concluding that the ZBA's decision to deny the variance was not based on substantial, competent, and material evidence. We disagree.

Under the City of Taylor's zoning ordinance, an applicant seeking a use variance has the burden of proof. City of Taylor Code of Ordinances, § 26.03(g)(3). The ZBA may grant a use variance "only in case where the applicant has shown an unnecessary hardship in the official record of the hearing." *Id*. at § 26.03(g)(5). More specifically, to establish the need for a variance, an applicant must prove all of the following:

a. Hardship. The applicant has demonstrated that the site cannot reasonably be used for any of the uses allowed within the current zoning district designation. The ZBA may require submission of documentation from professional or certified experts to substantiate this finding.

b. Unique Circumstances. That the condition or situation of the specific parcel of property or the intended use of such property for which the variance is sought is unique to that property and not commonly present in the general vicinity or in the zone district. The applicant must prove that there are certain features or conditions of the land that are not generally applicable throughout the zone and that these features make it impossible to earn a reasonable return with some adjustment. Such unique conditions or situations include:

1. Exceptional narrowness, shallowness or shape of a specific property on the effective date of the ordinance from which this chapter is derived.

2. Exceptional topographic conditions or other extraordinary situation on the land, building or structure.

3. The use or development of the property immediately adjoining the property in question.

4. Any other physical situation on the land, building or structure deemed by the ZBA to be extraordinary.

c. Character of the Neighborhood. The use variance will not alter the essential character of the neighborhood or the intent of the comprehensive development plan, or be a detriment to adjacent properties.

d. Capacity of Roads, Infrastructure and Public Services. The capacity and operations of public roads, utilities, other facilities and services will not be significantly compromised.

e. Not Self Created. The immediate practical difficulty causing the need for the variance request was not self-created by the applicant. [*Id*.]

The statutory powers of the ZBA include the power, in granting a variance, to "attach thereto such conditions regarding the location, the character, and other features of the proposed uses as it may deem reasonable in furtherance of the purpose of [the zoning ordinance]." *Id*. at § 26.03(a)(3).

In this case, petitioner's request for a variance implicates federal law as he expressly sought a variance as a reasonable accommodation under the Fair Housing Act (FHA), 42 USC 3601 *et seq*. The FHA prohibits discrimination in housing on the basis of "handicap," 42 USC 3604(f)(1), which includes a physical or mental impairment that substantially limits one or more of a person's major life activities, 42 USC 3602(h)(1). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 USC 3604(f)(3)(b). Accordingly, the FHA "creates an affirmative duty on [a] municipalit[y] . . . to

-4-

afford its disabled citizens reasonable accommodations in its municipal zoning practices if necessary to afford such persons equal opportunity in the use and enjoyment of their property." *Anderson v City of Blue Ash*, 798 F3d 338, 360 (CA 6, 2015), quoting *Howard v City of Beavercreek*, 276 F3d 802, 806 (CA 6, 2002).[1]  See 42 USC 3604(f).  This may require a municipality to waive or modify the requirements of its zoning ordinance to allow a reasonable accommodation.  See *Grandview Beach Ass'n v Cheboygan Co*, unpublished per curiam opinion of the Court of Appeals, issued January 16, 2018 (Docket No. 335159; 335206), pp 9-10 (affirming the planning commission's decision to waive the requirement that it be demonstrated before a special use permit was granted that there would be no impact on public services beyond those services' current capacities).[2]

Generally, to establish the need for a reasonable accommodation claim under the FHA, a plaintiff must show that (1) he suffers from a disability within the meaning of the FHA, (2) he requested an accommodation, (3) the defendant refused to make the accommodation, and (4) the defendant knew or should have known about the disability at the time of the refusal.  *Hollis v Chestnut Bend Homeowners Ass'n*, 760 F3d 531, 541 (CA 6, 2014).  In addition, a plaintiff must show that the proposed accommodation is both reasonable and necessary to afford the disabled person an equal opportunity for enjoyment of the housing of his choice.  *Id*.  "[T]he crux of a reasonable-accommodation . . . claim typically will be the question of reasonableness."  *Id*.  "To determine the reasonableness of the requested [accommodation], the burden that the requested [accommodation] would impose on the defendant (and perhaps on persons or interests whom the defendant represents) must be weighed against the benefits that would accrue to the plaintiff."  *Id*. at 541-542.  "Whether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination."  *Groner v Golden Gate Gardens Apartments*, 250 F3d 1039, 1044 (CA 6, 2001) (quotation marks and citation omitted).

Petitioner requested a variance to keep emotional support animals at his home beyond what was permitted by the City of Taylor Code of Ordinances, § 14.09.  In support of his petition, petitioner provided a map depicting his property and the size and location of the chicken coop.  He also provided three letters from two different doctors regarding his disability and in support of his requested accommodation.  Dr. Toledo advised in the June 2024 letter that petitioner had "certain limitations which affect[ed] his activities of daily living" because of his disease and anxiety following his diagnosis, and that she was "prescribing Emotional Support Animals that will assist [him] in coping with his disability and Huntington['s] disease."  Dr. Toledo further explained in her October 21, 2024 letter that petitioner's animals "foster a calm, peaceful, and relaxing environment for him daily" and that his chickens give him "purpose."  Moreover, Dr. Toledo

---

[1] Decisions of federal courts of appeals are not binding on this Court but may be persuasive. *Farmland Capital Solutions, LLC v Mich Valley Irrigation Co*, 335 Mich App 370, 381 n 8; 966 NW2d 709 (2021).

[2] Although an unpublished opinion has no precedential value, this Court may follow the opinion if it finds the reasoning persuasive.  MCR 7.215(C)(1); *Glasker-Davis v Auvenshine*, 333 Mich App 222, 232 n 4; 964 NW2d 809 (2020).

concluded that petitioner's mood and physical symptoms would "worsen in duration and severity" if petitioner's animals were removed from his property.

Rather than discussing the merits of petitioner's request for a reasonable accommodation under the FHA, the ZBA focused on the lack of signature on one of the letters and the failure to include a medical license number on the others. Further, the ZBA characterized the petitioner's request for a variance as "vague" and denied the request because petitioner did not provide evidence of the health of the chickens or an explanation of how the animals would be kept "as not to create health issues or rodent issues."

Although the ZBA's findings are entitled to deference, *Pegasus Wind*, 513 Mich at 45, the manner in which the ZBA summarily dismissed petitioner's medical evidence suggests that its findings were not based on the evidence before it and that the ZBA did not properly consider petitioner's request for a variance. Although the letters appeared on letterhead from Henry Ford Health and clearly identified the medical providers, the ZBA's decision focused only on the lack of signature and medical license number and did not discuss the content of any of the letters. As the circuit court recognized, the medical evidence, which the ZBA disregarded, was important when determining whether petitioner was entitled to an accommodation under the FHA. The letters demonstrated that petitioner had a disability and his medical providers had prescribed emotional support animals to alleviate physical, mental, and emotional problems he experienced because of his disability.

Respondent argues that the reference to these deficiencies does not mean that the ZBA ignored the letters, but there is nothing in the ZBA's decision to suggest that it meaningfully considered the medical evidence provided by petitioner. To the contrary, the ZBA's decision characterizing petitioner's request as "vague" indicates that the ZBA did not consider the medical providers' letters. Although the decision itself does not state what was vague about the request, the ZBA's minutes suggest the ZBA found the request vague because the exact number of animals to be kept at the property was not identified. The minutes from the ZBA meeting reflected that petitioner was "requesting the keeping of a dog, cats (unknown number), macaws (unknown number) and thirteen (13) chickens as his emotional support animals." Yet, Dr. Toledo's letter clearly identifies the exact number of animals: 11 chickens, a dog, two cats, a blue and gold macaw, and an African gray parrot.

Although the ZBA's concerns about the animals causing potential health or rodent issues are valid, these concerns were merely speculative on the available record and go more to whether petitioner's requested accommodation was reasonable. Assessing the reasonableness of an accommodation requires weighing the burden on respondent and the benefits to petitioner, and the record shows that the ZBA focused only on the potential burdens. See *Hollis*, 760 F3d at 541-542. The ZBA's decision does not reflect that the ZBA weighed the benefits and burdens of the proposed accommodation because the ZBA highlighted only minor technical deficiencies for disregarding the opinions of petitioner's medical providers.

On the record before us, the circuit court did not misapprehend or grossly misapply the substantial evidence test to the zoning board of appeals' factual findings. *Pegasus Wind*, 513 Mich at 45.

## B. REMEDY

Respondent also argues that, after concluding the ZBA's decision was not supported by substantial, competent, and material evidence, the circuit court erred by reversing the ZBA's decision and not ordering further proceedings before the ZBA under MCR 7.122(G)(1)(b). Given that the ZBA did not make findings on the merit of respondent's request for a variance and request for accommodation as supported by his medical documentation, we agree.

Under Michigan's Zoning Enabling Act, "[a]ny party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located." MCL 125.3606(1). As discussed earlier, "[w]hen reviewing a decision of a zoning board of appeals, a circuit court's review is limited to whether the decision is authorized by law and supported by competent, material, and substantial evidence on the whole record." *Pegasus Wind*, 513 Mich at 44 (quotation marks and citation omitted).

MCL 125.3606(2) provides that "[i]f the court finds the record inadequate to make the review required . . . or finds that additional material evidence exists that with good reason was not presented, the court shall order further proceedings on conditions that the court considers proper." See also MCR 7.122(G)(1)(b). "The zoning board of appeals may modify its findings and decision as a result of the new proceedings or may affirm the original decision." MCL 125.3606(2); MCR 7.122(G)(1)(b). The supplementary record is then filed with the circuit court. MCL 125.3606(2). Ultimately, the circuit court "may affirm, reverse, or modify the decision of the board of appeals" or "may make other orders as justice requires." MCL 125.3606(4); MCR 7.122(G)(1)(c). Further proceedings are necessary when the ZBA fails to make required factual findings, see *Whitman v Galien Twp*, 288 Mich App 672, 677; 808 NW2d 9 (2010), or "the record of proceedings below is presented in extremely brief summary fashion, lacking in clarity," *Murphy v Oakland County Dept of Health*, 95 Mich App 337, 339-340; 290 NW2d 139 (1980).

Recognizing that "courts do not sit to function as a super zoning board," *Cook v Bandeen*, 356 Mich 328, 333; 96 NW2d 743 (1959), the lack of findings by the ZBA on whether petitioner's requested accommodation is reasonable and necessary warrants further proceedings before the ZBA and not simply reversal of the ZBA's decision denying the variance. The record in this case consists of petitioner's application, a drawing of his property, three letters from petitioner's medical providers, and the minutes from the ZBA's public hearing. The ZBA's decision itself is short and does not sufficiently address whether petitioner's request was reasonable or necessary. As discussed, the ZBA disregarded petitioner's medical documentation and did not weigh the burdens of allowing petitioner to keep the animals on his property against the benefits he would experience from keeping his emotional support animals. Further, to the extent applicable, the ZBA's decision does not include any consideration of City of Taylor Code of Ordinances § 26.03(g)(5) and whether petitioner met his burden of establishing unnecessary hardship to justify the granting of a variance.

As further findings are necessary to determine whether denial of a variance is authorized by law, the circuit court erred by reversing the ZBA's decision and not remanding for further proceedings. See MCL 125.3606(2).

## IV. CONCLUSION

We affirm, in part, and reverse, in part, the circuit court's decision and remand with directions to the circuit court to order further proceedings before the ZBA. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young